IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| BRITTANY SPENCER, ) | CIVIL ACTION NO. 9:16-3464-RBH-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| NANCY A. BERRYHILL, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on March 2, 2010, alleging disability beginning February 28, 2010[1] due to physical limitations related to her hands and learning disabilities. (R.pp. 100, 104-105, 140-141, 353-354). Plaintiff's claim was denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ),



---

[1] Although Plaintiff's onset date is listed in her application and the SSA's determinations as February 28, 2010, the ALJ lists an alleged onset date of October 28, 2009 in his opinion. (R.pp. 14-15, 153, 155, 157-158, 164, 353). It appears that the first ALJ listed an incorrect onset date of October 28, 2009, based on when Plaintiff had last engaged in substantial gainful activity, and thereafter the next two unfavorable ALJ decisions continued to list this erroneous date. (R.pp. 15, 48, 164, 188, 212).

which was held on December 18, 2012.[2] (R.pp. 60-129). The ALJ thereafter denied Plaintiff's claim in a decision issued February 12, 2013. (R.pp. 161-174). However, the Appeals Council remanded the case on April 22, 2014, based on the finding in the decision that Plaintiff could only "occasionally" perform fine or gross manipulation, while the jobs provided by the Vocational Expert (VE) and cited by the ALJ as being jobs that Plaintiff could perform required fingering and handling "constantly". (R.pp. 179-181).

On January 2, 2015, a second hearing was held, following which an unfavorable decision was issued on March 20, 2015. (R.pp. 89-152, 183-219). However, the Appeals Council issued another remand on May 28, 2015, again based on the ALJ limiting Plaintiff's bilateral handling to "occasional", while the jobs provided by the VE required handling "frequently" or "constantly". (R.pp. 221-222). The ALJ was directed to obtain clarifying VE testimony, and on October 16, 2015, the ALJ held another hearing. The ALJ thereafter issued another unfavorable decision on March 7, 2016. (R.pp. 10-48, 130-152). This time, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-3).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

---

[2]While Plaintiff is currently represented by counsel, Plaintiff proceeded pro se at the administrative level.



**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also, Hepp v. Astrue, 511 F.3d 798, 806 (8th cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Discussion**

A review of the record shows that Plaintiff, who was only twenty-four (24)[3] years old

---

[3]Although Plaintiff's age is listed as twenty-three (23) in the ALJ's decisions and even in the
(continued...)

when she alleges she became disabled, has a limited education[4] with past relevant work experience as a puncher, cashier, and box handler. (R.pp. 46, 62, 82, 98-99, 101, 117-120, 138-139, 143-145). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.

After a review of the evidence and testimony in this case, the ALJ determined that although Plaintiff does suffer from the "severe" impairments[5] of bilateral brachysyndactyly of the middle, ring, and small fingers on the right and ring and small fingers on the left; diabetes mellitus type II; and a learning disability, thereby rendering her unable to perform any of her past relevant work, she nevertheless retained the residual functional capacity (RFC) to perform light work[6] except that the bilateral use of hand controls to push and pull repetitively is limited to occasional within the exertional level; the Plaintiff could never climb ropes; occasionally climb ladders, scaffolds and

---

[3](...continued)
Plaintiff's brief, this discrepancy appears related to the incorrect onset date. Her birthdate is March 10, 1986, and her (correct) alleged onset date is February 28, 2010. See Footnote 1, supra; see also (R.pp. 62, 153, 155).

[4]Plaintiff testified that she attended school for twelve years, but did not receive a diploma. She instead received a certificate of completion. (R.p. 82).

[5]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[6]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).



crawl; frequently climb ramps and stairs; constantly balance, stoop, kneel, and crouch; handle bilaterally on a frequent basis within her exertional level; finger bilaterally on a frequent basis with thumb and index finger and occasionally with the middle, ring, and small fingers; and occasionally be exposed to hazards associated with unprotected dangerous machinery or unprotected heights, while otherwise being capable of being aware of normal hazards and taking appropriate precautions. The ALJ further determined that Plaintiff is able to understand, remember, and carry out simple, routine tasks in a low-stress environment (defined as free of fast-paced or team-dependent production requirements) involving the application of commonsense understanding to carry out detailed, but uninvolved written or oral instructions with few concrete variables in or from standardized situations. (R.pp. 23-24). The ALJ then found that there were jobs that Plaintiff could perform with these limitations, and that she was therefore not entitled to disability benefits. (R.p. 48).

Plaintiff asserts that in reaching this decision, the Commissioner erred by upholding the ALJ's decision since it was not supported by substantial evidence. Plaintiff further argues that the ALJ failed to adequately assist a pro se Plaintiff. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

**I.**

Plaintiff's primary complaint centers around the ALJ's change from his March 20, 2015 decision, where he found that Plaintiff could only perform handling occasionally, to his March 7, 2016 decision, where he found that she could perform handling frequently. (R.pp. 23, 196). Plaintiff notes that while the VE at the third (and most recent) hearing testified that there were jobs



5

that Plaintiff could perform with the limitations set out by the ALJ, the VE testified that there were no jobs that Plaintiff could perform if she was limited to handling occasionally. (R.pp. 147-148). Plaintiff argues that the ALJ did not demonstrate that her ability to handle had changed since his last decision and, therefore, the same RFC restriction for handling ought to have remained in place. Accordingly, Plaintiff contends that this error entitles her to an award of benefits, or a remand for further consideration of her claim.

Plaintiff's argument is basically that the ALJ should not have reconsidered his earlier ruling, even though the case was remanded to him for that very purpose. However, the Appeals Council *vacated* the ALJ's March 20, 2015 decision. (R.pp. 221-222). Therefore, the ALJ's previous decision has no preclusive effect. See Frasier v. Colvin, No. 12-cv-1947, 2014 WL 526400 (D.S.C. Feb. 10, 2014).

> The ALJ was not bound by any prior RFC findings, and properly based his conclusions on the entire record before the court from the time period relevant to Plaintiff's application. See Gibbs v. Barnhart, 130 F. App'x 426, 430, 2005 WL 1052858 (11th Cir.2005) ["Because the Appeals Council vacated the first ALJ's written decision with instructions for the ALJ to obtain and consider additional evidence, the specific findings contained in that first decision were never conclusively established and were subject to modification."]; Houston v. Sullivan, 895 F.2d 1012 (5th Cir.1989) [ALJ not bound to earlier decision, on remand].

Id., at * 18; see also Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*]. The ALJ provided specific reasons in his March 10, 2016 opinion for why he assigned Plaintiff a "frequent" handling RFC; see generally (R.pp. 18-19, 26-27, 29, 33-35, 38-45); and therefore no reversible error is shown in the record before this Court. Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) ["What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to



trace the path of the ALJ's reasoning.'"].

As noted by the ALJ in his decision, on July 7, 2010, Dr. David N. Holt noted that Plaintiff's grip strength was 4/5 with essentially normal development of the thumb and forefinger. Dr. Holt stated that "[f]ine manipulation was adequate with many functions while gross manipulation was limited by the hands and low carrying capacity." (R.pp. 814-815). With respect to Dr. Holt's findings, the ALJ stated that, consistent with Dr. Holt's remarks, he had limited Plaintiff's manipulative actions and lifting. Although noting that this was a one-time examination, the ALJ gave "greater weight" to Dr. Holt's examination findings, further noting that, despite Plaintiff's hand problems, she had worked in both an ice cream shop and in cosmetology, and that Dr. Holt had neither provided a specific degree of limitation with respect to manipulation, nor did he articulate any restrictions with manipulation in functional terms. (R.p. 45). See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician].

On August 20, 2010, state agency physician Dr. Adrin Corlette opined that Plaintiff has "bilateral congenital hand deformities with decrease grip strengths and manipulative skills", which was a severe impairment. (R.p. 837). Under manipulative limitations, Dr. Corlette stated that Plaintiff was limited in handling and noted "limited handling to occasional BUE . . . ." [Bilateral Upper Extremity]. (R.p. 839). However, the ALJ gave Dr. Corlette's findings only "some weight" in light of the fact that she had had no actual interaction with the Plaintiff and had only an incomplete record to review. Instead, based on the ALJ's review and consideration of a more complete record,[7] the ALJ assigned Plaintiff *more* restrictive RFC findings than did Dr. Corlette with respect to various

---

[7]Dr. Corlette's opinion is from 2010, while the record discussed by the ALJ in the decision goes through 2015.



7

postural and exertional limitations, but assigned *less* restrictive RFC findings than did Dr. Corlette with respect to Plaintiff's manipulative functions, finding that they were over broad in light of Plaintiff's specific hand and individual finger deformities and the record as a whole. (R.pp. 43-44).

The undersigned can find no reversible error in the ALJ's evaluation of this evidence. The record reflect that on June 22, 2011, when Plaintiff presented to the Abbeville Area Medical Center with complaints of a headache, Dr. Don Abernethy noted that Plaintiff had full range of motion and no tenderness in her extremities, even while noting her right hand deformity (from birth). (R.pp. 873-874). On November 2, 2011, Plaintiff was evaluated at Abbeville Internal Medicine for various medical complaints. Plaintiff advised the attendant (apparently a nurse practitioner) that she had had hand pain "off-on all [of her] life", which the nurse noted was "long standing due to deformities." (R.p. 1014). The ALJ also noted that all of Plaintiff's orthopedic care occurred within a relatively short 6-month period between December 2011 and May 2012, and that all treatment received was conservative. (R.p. 25). Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)[conservative treatment inconsistent with allegations of disability]. Moreover, Plaintiff's orthopedic care began in December 2011 following a fall, and was primarily for pain in her left knee rather than her hands. (R.pp. 25-26); see also (R.pp. 849-850)[Dr. John Cathcart's treatment note dated December 30, 2011 for treatment of Plaintiff's knee after a fall on December 22, 2011[8]].

In May 2012, Plaintiff returned to the Lakelands Orthopaedic & Sports Medicine Clinic for evaluation of her bilateral hand deformities. (R.pp. 26, 846-847). Plaintiff complained of diffuse pain in her hands, which was worse with use. Dr. John King noted that Plaintiff's bilateral hand deformities had been present since birth, and that she had undergone three (3) hand surgeries.

---

[8]Dr. Cathcart is with Lakelands Orthopaedic & Sports Medicine Clinic, PA. (R.p. 849).



Even so, on examination Plaintiff had full motion of the right and left forearms without discomfort; full motion of the right and left wrist with no tenderness; normal motion in her right and left thumbs without triggering and with no tenderness or instability at the CMC, MP or IP joints; and normal functioning of the index fingers on both the right and left hands. Plaintiff's main problem appeared to be with her middle fingers on both hands. She had skin grafting on the right middle finger with a restriction in the flexion contracture of the PIP joint of 80 degrees with pain, while the left middle finger had a "slight" ulnar deviation and skin graft about the ulnar aspect of the proximal phalanx and some scarring dorsally over the MP joint. Finally, both ring and small fingers were noted to be shortened, with a "slight" flexion and radial deviation in both. Plaintiff also complained of tenderness at the base of the ring fingers. Plaintiff exhibited a positive Tinel's[9] over the carpal tunnels bilaterally and over the cubital tunnel on the left, and had a positive Phalen's[10] in both hands. Dr. King opined that although it was difficult to assess Plaintiff's intrinsic hand function because of her complaints of pain in her digits, she had only a mild thenar weakness in her thumbs, and her neurologic examination revealed normal sensation throughout. (R.pp. 846-847). Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [noting importance of treating physician opinions].

In January 2013, Plaintiff's pain scale was listed as being zero on a scale of zero to ten. (R.p. 1007). On September 24, 2014, Plaintiff presented to Dr. Monty Kitchens at Abbeville Internal Medicine with complaints of her hands locking and having pain when she uses her hands more. (R.p. 981). However, at that visit, Dr. Kitchens again noted that Plaintiff's pain level was at

---

[9]A test to determine if there is entrapment of the median nerve in the carpal tunnel. https://www.ebmconsult.com/articles/tinels-test. September 2016.

[10]Wrist examination procedure that identifies the presence of carpal tunnel syndrome. https://medisavvy.com/phalens-test/. April 22, 2017



0/10 on a ten point scale, and opined that Plaintiff retained 4/5 muscle strength and tone in her upper extremities. Further, although Plaintiff complained of pain on use, an examination revealed no joint tenderness or swelling. (R.pp. 982-983). Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]. At the ALJ hearing on January 2, 2015, Plaintiff testified that she did not have any new conditions, just that her existing problems were getting worse. (R.p. 93). However, when Plaintiff returned to Abbeville Internal Medicine on January 13, 2015 for her three month follow-up, Plaintiff reported to Dr. Kitchens that she felt well with no complaints of pain. (R.p. 976). Plaintiff's joint pain was noted to be improved with Naproxen, she had no muscle pain or weakness or swelling in her extremities, no joint tenderness, 4/5 upper extremity strength overall (with decreased pain), and a report of a 0/10 pain level at that time. (R.pp. 977-978).[11]

The ALJ also discussed records received and reviewed after the last remand from the previous decision. (R.pp. 33-35). On April 16, 2015, Plaintiff complained about her hand pain and said it had not gotten any better. However, on examination Plaintiff's joint pain and stiffness were noted improved some with Naproxen, while with regard to muscle tone and strength, the examination results again indicated the presence of 4/5 strength for wrist flexors and intrinsics, but with pain, although the notation again indicates Plaintiff had a pain level of 0/10 at that time. (R.pp. 971-974). Moreover, on May 2, 2015, Plaintiff's medical records note that notwithstanding the deformity of her

---

[11]This was now after Plaintiff's eligibility for DIB had expired. The ALJ lists the Plaintiff's DLI as September 30, 2014, while the DLI listed on all documents promulgated by the SSA is June 30, 2011. (R.pp. 16, 153, 155, 190). Plaintiff appears to agree that she was last insured for DIB on June 30, 2011. See, Plaintiff's Brief, p. 1 & n. 1. Therefore, in order to be eligible for DIB, Plaintiff must show that she was disabled on or before that date. Johnson v. Barnhart, 434 F.3d 650, 655-656 (4th Cir. 2005); see 42 U.S.C. § 423(c); 20 C.F.R. § 404.101. In any event, no matter which date is used, the ALJ found that Plaintiff was not disabled through the date of his decision. (R.p. 48).



10

hands, she had a full active range of motion and no tenderness. (R.p. 1089).

This evidence provides substantial support for the ALJ's findings and conclusions. The Commissioner is not disputing that Plaintiff suffers from a congenital hand deformity which can cause her pain, but the ALJ found that despite Plaintiff's congenital deformity of her hands, she has learned to function relatively well with her condition, noting that she has been able to drive, help rear her child, dress, do some household chores, cook some, talk on the phone, perform personal care activities, shop, and count change. (R.p. 19). This finding is supported by Plaintiff's report of June 2010 that although she rarely did chores at home, she did make up beds sometimes and occasionally cooks. She also reported that she took turns with other relatives feeding her baby and that she did her own laundry on occasion. (R.p. 808). Plaintiff further stated that she attended church and praise dances with her god brother. (R.pp. 808-809). In July 2010, Plaintiff reported that she could adequately bathe and feed herself, that she could dress herself except for buttons and shoelaces, that she used the dishwasher, did a little vacuuming and shopping, helped bathe her daughter, and drove. (R.pp. 812-813). Additionally, at the hearing on December 18, 2012, Plaintiff testified that she exercised twice a week (which primarily consisted of walking in place for 15 to 30 minutes), attends church once a week, and participates in family bible studies. (R.pp. 75-76). Plaintiff also testified that she dusted some, tried to use the vacuum two or three times a month, and drives (although she testified that she did not do so often). (R.pp. 78-79). Cf. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005)[Accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating impairments where she engaged in a variety of activities]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may consider whether claimant's activities are consistent with allegations].

The ALJ reviewed the medical record together with Plaintiff's subjective evidence and



11

testimony and determined that Plaintiff maintained the ability to frequently handle, citing to the findings of Dr. King, the accompanying x-rays, Plaintiff's activities of daily living, her generally conservative treatment history, her normal sensations and general hand examination findings,[12] and normal ranges of motion. While Plaintiff complains that the ALJ had found that she was limited to occasionally handling in a previous decision, that earlier finding was not binding on the ALJ upon remand. Hancock, 206 F.Supp. 2d at 763-764 [On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*]. Rather, the question is whether the ALJ's conclusion in his March 7, 2016 decision that Plaintiff can frequently handle is supported by substantial evidence in the case record. Hays, 907 F.2d at 1456 ["If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is 'substantial evidence'"]. The records and opinions cited hereinabove, supra, provide substantial evidence to support the ALJ's findings and conclusions.

Although Plaintiff obviously wanted the ALJ to credit the medical evidence in such a way as to limit her ability to handle to "ocassionally" as opposed to "frequently", it is the job of the ALJ to consider *all of the evidence* and resolve any conflicts in that evidence in determining the extent of a claimant's impairments, and the ALJ's findings in this regard must be upheld by this Court as long as there is substantial evidence to support the ALJ's conclusion. See Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; Johnson v. Barnhart, 434 F.3d at 653 ["In reviewing for

---

[12]Consistent with these findings, particularly those of Dr. King, the ALJ concluded that, while Plaintiff could finger bilaterally on a frequent basis with the thumb and index finger, she could only occasionally finger with the middle, ring and small fingers. (R.p. 23); cf. (R.pp. 846-847).



substantial evidence, we do not undertake to reweigh conflicting evidence."]. Hence, while Plaintiff may disagree with the ALJ's RFC finding,

> "the determination of a claimant's RFC is ultimately the province of the ALJ as the representative of the Commissioner." McPherson v. Astrue, 605 F. Supp. 2d 744, 755 (S.D. W. Va. 2009) (citing 20 C.F.R. § 404.1527(e)(2)); *see also* Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)." "The reviewing court's sole responsibility is to determine whether the ALJ's determination of the claimant's RFC is rational and based on substantial evidence." *Id.* (citing Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974)).

Smith-Williams v. Berryhill, No. 16-03556, 2017 WL 1284961, at *9 (S.D.W. Va. Mar. 6, 2017), *report and recommendation adopted*, No. 16-3556, 2017 WL 1281147 (S.D.W. Va. Apr. 4, 2017). As such, to the extent Plaintiff is arguing that the evidence could support a different finding in this case, this Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence. Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 3 (S.D.Ohio Nov. 15, 2011), adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012) [Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; see also Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"]; Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)[court scrutinizes the record as a whole to determine whether the conclusions reached are rational].

Considered pursuant to the applicable standard of review, there is substantial evidence in the case record to support the ALJ's conclusion that Plaintiff was able to frequently handle with the other restrictions noted during the relevant time period. Therefore, Plaintiff's contention that the ALJ failed to properly evaluate the evidence in determining her RFC is without merit. Kellough v. Heckler, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the Secretary's dispositive factual findings are



13

supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]; see also Bowen, 482 U.S. at 146 [Plaintiff has the burden to show that she has a disabling impairment].

**II**.

In her second issue, Plaintiff contends that the ALJ failed to provide adequate assistance to her as a pro se claimant and in light of her special needs. However, the record reflects that Plaintiff was advised of her right to representation through pamphlets, notice of hearing letters, and by the ALJ at her hearings. (R.pp. 63-66, 93-96, 132-134, 328-329, 339, 342, 352). Plaintiff voluntarily waived her right to counsel, both orally and in writing, indicating that she understood her right to representation. Moreover, the undersigned is constrained to note that Plaintiff's application has been pending for over seven (7) years, during which time she has submitted hundreds of pages of medical records as evidence in her case. The record also reflects that Plaintiff received her high school certification of completion, and she successfully obtained two of the three remands sought from the Appeals Council, showing her ability to effectively pursue her case. (R.pp. 82, 134, 324). The hearing transcript also indicates that Plaintiff sufficiently understood the administrative process and provided clear and coherent testimony. (R.pp. 130-142). Hence, Plaintiff has not shown that she did not sufficiently understand the administrative process and did not make a knowing and intelligent waiver of her right to representation, which was her right to do in a non-adversarial proceeding. Smith v. Schweiker, 677 F.2d 826, 828 (11th Cir. 1982).

With respect to Plaintiff's contention that the ALJ failed to sufficiently assist her in obtaining additional medical records, the record shows that the ALJ procured records from Plaintiff's treating ophthalmologist, hospital records from Abbeville Medical Center, and progress notes from



Abbeville internal medicine after the hearing. (R.pp. 135-136, 1069-1127). Plaintiff and her counsel have not shown or established that any further medical records actually exist, or would change the nature of the outcome of the case. In fact, no additional records have been submitted to support Plaintiff's argument. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." Binion v. Shalala, 13 F.3d 243, 246 (7th Cir. 1994).

Therefore, based upon a review of the evidence, hearing transcripts, and records, Plaintiff has not shown that the ALJ failed to assist her in light of her special needs or shown that the ALJ did not fully develop the record and properly assist her. This argument is without merit.

## Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.



The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

December 19, 2017
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).